36 N.J. Super. 435 (1955)
116 A.2d 206
CHARLES J. BIANCHI, AN INDIVIDUAL TRADING AS PIEDMONT DAIRY, ET ALS., DEFENDANTS-APPELLANTS AND DECLARATORY JUDGMENT PLAINTIFFS,
v.
FLOYD R. HOFFMAN, DIRECTOR, OFFICE OF MILK INDUSTRY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 5, 1955.
Decided July 25, 1955.
*437 Before Judges COLIE, GRIMSHAW and McGEEHAN.
Mr. Otto E. Riemenschneider argued the cause for appellants and declaratory judgment plaintiffs.
Mr. David D. Furman argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General; Mr. Harold Kolovsky, of counsel; Mr. Joseph Lanigan and Mr. David D. Furman, on the brief).
The opinion of the court was delivered by McGEEHAN, J.S.C. (temporarily assigned).
By order of the Director of the Office of Milk Industry, the licenses of Charles J. Bianchi, John Bischoff and Marianne Kerwin, licensed subdealers, were suspended for ten days for failure to file verified reports for the months of May, June and July, 1954, as required by Regulations H-1 and H-1A of the Milk Control Agency, and they appealed. The Independent Milk Distributors Association and the Bergen and Passaic Milk Distributors Association, which are associations of licensed subdealers, were granted permission to intervene as applicants for a declaratory judgment declaring Regulations H-1 and H-1A invalid.
Regulation H-1, effective May 1, 1954, requires monthly filing of business information on form H-1A, verified by oath or affirmation of the licensed processor, dealer, producer-dealer or subdealer concerning the sale or purchase of milk or milk products at prices less than the resale prices established *438 in the resale price orders of the Office of Milk Industry. Specifically, the licensee is required to report (a) the name and address of such accounts, (b) the daily average number of quarts sold on such accounts, and (c) the amount of discount; and as to wholesale accounts acquired or discontinued during the period of the report, the licensee is required to report (a) name and address of the account, (b) daily average quarts, (c) name of salesman who is familiar with the account, and (d) reason for making the change given by the account to the one reporting.
It is first contended that the requirement that the licensee make report H-1A under oath, under penalty of suspension or revocation of license, violates the federal and state constitutional right and privilege of the licensee against self-incrimination, because it makes such licensee a witness against himself in the enforcement of the price-fixing regulation. The privilege against self-incrimination, contained in the Fifth Amendment to the Constitution of the United States, applies only to the Federal Government and not to the individual states. Such a privilege in the individual states is not required by the Fourteenth Amendment to the Constitution of the United States. The New Jersey Constitution has no provision for privilege against self-incrimination. In re Vince, 2 N.J. 443 (1949). Thus, no Federal or State constitutional right or privilege of the licensee against self-incrimination is violated.
However, we do have a statute (N.J.S. 2A:81-5) which provides: "No witness shall be compelled to answer any question if the answer will expose him to a criminal prosecution or penalty or to a forfeiture of his estate." The privilege against self-incrimination, whether under constitution or statute, does not protect against disclosure of records required to be kept by law in order that there may be suitable information of transactions which are the appropriate subject of governmental regulation and the enforcement of restrictions validly established. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; Bowles v. Beatrice Creamery Co., 146 F.2d 774 (10 Cir., 1944); Rodgers v. United *439 States, 138 F.2d 992 (6 Cir., 1943). The disclosures required by Regulations H-1 and H-1A fall within this class.
Next it is argued that Regulations H-1 and H-1A are arbitrary, capricious and discriminatory because appellants are made subject to them as licensed New Jersey dealers, while out of state corporations are not subject thereto. The Legislature and its agent, the Director of Milk Control, are constitutionally barred from interstate regulation, but the local milk industry is subject to legislative control. State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504 (E. & A. 1935); Abbotts Dairies, Inc., v. Armstrong, 14 N.J. 319 (1954). The regulations in question apply to all intrastate dealers alike and without discrimination.
The three plaintiffs whose licenses have been suspended claim that the suspensions should not stand because the price-fixing order was repealed after the violations of regulations by these appellants had occurred. The repeal of the price-fixing order after appellants' violations of the regulations had occurred did not absolve appellants from the penalty for violation of such regulations. Clark v. Fire Department of City of Elizabeth, 43 N.J.L. 172 (Sup. Ct. 1881), affirmed 43 N.J.L. 670 (E. & A. 1881).
We are asked to bar the Director of Milk Control from proceeding in the future against members of plaintiff Milk Distributors Association for noncompliance with Regulations H-1 and H-1A. It is said that when the price-fixing order itself was repealed, there was no longer any justification for these two regulations. These regulations require the maintenance of business records and the filing of verified reports on subject matters specifically authorized by statute (R.S. 4:12A-37). The required disclosures do not depend for their validity upon the existence of a price-fixing order. B.R. Waldron & Sons Co., Inc., v. Milk Control Board, 131 N.J.L. 267 (Sup. Ct. 1944), affirmed O.B. 131 N.J.L. 388 (E. & A. 1944). The court said, 131 N.J.L., at page 270:
"It is the imperative duty of the Director to enforce the statutory policy. It is his paramount function to safeguard the sources *440 of milk through the exercise of the means laid down in the statute. He is empowered to take such measures, including the fixation of prices, as may be necessary `to control or prevent unfair, unjust, destructive or demoralizing practices which are likely to result in the demoralization of agricultural interest in this State engaged in the production of milk or interfere with the maintenance of a fresh, wholesome supply of sanitary milk for the consumers of this State;' and to fix such minimum prices in the trade `as will best insure a sufficient quantity of fresh, pure and wholesome milk to the inhabitants of this State,' and, for this purpose, he is under a duty to consider, inter alia, the `conditions affecting the cost of production, cost of transportation and marketing, and the amount necessary to yield a reasonable return to the producer and to the milk dealer, processor or subdealer.' Ch. 274 of the Laws of 1941, Pamph. L., p. 713, secs. 21, 22, N.J.S.A. 4:12A-21, 4:12A-22."
The information required by Regulations H-1 and H-1A has a vital bearing on the question whether the price-fixing powers given by the statute should be exercised and, if exercised, on the timing of such exercise.
The order of the Director suspending the licenses of Charles J. Bianchi, John Bischoff and Marianne Kerwin is affirmed and Regulations H-1 and H-1A are declared valid.